# 24-2370

---

## UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

Mohamed John Akhtar and  La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club,

      Plaintiffs-Appellants,

          v.

Eric Adams, Mayor of  the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection,  Eric I. Eisenberg,

      Defendants-Appellees.

On Appeal From The United States District Court
For the Southern District of New York

---

## Brief for the Plaintiff-Appellants

---

Anthony N. Iannarelli Jr.
74 Lafayette Avenue
Suite 202 # 116
Suffern, New York
212-431-4031

1

1. Corporate Disclosure Statement Required by Rule 26.1

Corporate Plaintiff/Appellate La Buca Restaurant, Inc. d/b/a Swing 46 Jazz and Supper Club is a domestic, non-public, for-profit entity wholly owned by Plaintiff/Appellate Mohamed John Akhtar.  The corporation, incorporated in the State of New York,  has no parent companies, subsidiaries,  and/or affiliates, and no public company owns any of its stock.

Note: By clicking on page number to the right of listing in the Table of Contents page, the reader will be brought to the selected page in the brief.  To return, write Table of Contents  in search bar. Table of contents can be highlighted, saved, and pasted in search bar for reuse without retyping out Table of Contents every time.

# 1. Table of Contents

Corporate Disclosure Statement Required by Rule 26.1....................................... 2

1.  1(a.) Table of Contents and Authorities...........................................................3
    1(b).  Table of Authorities.................................................................................3
2.  Jurisdictional Statement..................................................................................5
    a.  Basis of district court's jurisdiction...............................................................5
    b.  Basis for the U.S. Court of Appeals for the Second Circuit's jurisdiction........5
    c.  The filing dates establishing the timeliness of appeal for review...................6
3.  Statement of Issues Presented for Review.....................................................2-5
4.  Statement of the Case.....................................................................................6-9
    a.  Facts Relevant for Review ........................................................................14-17
    b.  Relevant Procedural History......................................................................18
    c.  The Rulings Presented for Review..............................................................18
5.  Summary of Argument and Standard of Review...........................................20-22
6.  Argument.......................................................................................................21-32
7.  Conclusion......................................................................................................34
8.  Certificate of Compliance...............................................................................34

Table of Authorities
*Cases*
*Patsy v. New York  Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557 (1982)........................29,33
*Prez v. Sturgis Public School,* 598 U.S. 142, 143 S. Ct. 859,
          215 L. Ed. 2d 95 (2023)........................................................................32,33
*Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir.2009)............................................32
*Mirabilio v. Reg'l Sch. Dist. 16*, 761 F.3d 212,  (2d Cir. 2014)...........................7
*Rachman Bag* Co. *v. Liberty Mut. Ins.* Co., 46 F.3d 230, 234 (2d Cir. 1995)........................6
*Vega v. Hempstead Union Free School District*,
          801 F.3d 72 (2d Cir. 2015) ....................................................................23

The United States Constitution...............................................................................22

Statutes
*28 U.S.C. §1291*.....................................................................................................6
*42 U.S.C. § 1983*....................................................................................................6

Federal Rules of Civil Procedure
Fed. R. Civ. P. (e)(2)(b)........................................................................................24
Fed. R. Civ. P. 12(b)(6)..........................................................................................7

New York *C.P.L.R.*

*CPLR* 2103 §(b)3......................................................................................29,33
*CPLR* 2103 §(b)4..........................................................................................7

Newsprint

 Allie Griffin *et al.* *NYC bar owner claims outgoing NYPD commish's brother James Caban tried to 'extort' him over police enforcement: report* New York Post  https://nypost.com/2024/09/12/us-news/nyc-bar-owner-says-james-caban-tried-to-extort-him-over-nypd-enforcement-report/    New York Post, Sept. 12, 2024. ..................................33

### 2. Jurisdictional Statement

a. The district court's jurisdiction is based upon the filing of plaintiffs-appellants Mohamed John Akar and La Buca, Restaurant ,Inc., d/b/a Swing 46 Jazz and Supper Club's (hereinafter, and unless specified individually, "plaintiffs-appellants") verified complaint on July 31, 2023, in the United States District Court for the Southern District of New York. The verified complaint is grounded upon a claim of violations of plaintiffs-appellants' rights by defendant-appellees that are protected by the United States Constitution and federal statutes pursuant to 42 U.S.C. § 1983.

b. The U.S. Court of Appeals for the Second Circuit has jurisdiction pursuant to 28 U.S.C § 1291 upon a final Order of the district court judge (Clake, J.), dated August19, 2024, adopting the Report and Recommendation of the magistrate-judge (Figueredo, M.J.) dated June 5, 2024. See Plaintiffs-Appellant's Appendix (hereinafter noted as "PA" followed by a page number) PA pp. 3-5 and pp. 6-34, respectively.

The Order of the district court granted defendant-appellants Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection (hereinafter, and unless specified individually, "NYC defendants-appellees"), motion by dismissing Counts I

5

and IV of plaintiffs/appellants' Verified Complaint with prejudice. And further, granting Eric I. Eisenberg's (hereinafter defendant-appellee Eisenberg) motion dismissing Counts II, III, and V without prejudice, with leave to file an amended complaint.  PA p. 5.

Consistent with the foregoing, plaintiffs-appellants filed a motion, dated September 3, 2024,  for permission to file an interlocutory appeal for the dismissal of counts II, III, and V of the Verified Complaint. PA p. 2.  No decision by the district court has been docketed as to that motion.

In any case, plaintiff-appellants filed their Amended Complaint on October 7, 2024.  Docket Sheet No. 104  (hereinafter "ECF" followed by a docketing number(s)) .

c.  The plaintiff-appellants filed their Notice of Appeal on September 9, 2024, establishing the timeliness of appeal for review by the Circuit Court.  ECF No. 92 & 93.

### 3. Statement of Issues Presented for Review

Plaintiff-appellants contend the district court erred by granting NYC defendant-appellees' motion to dismiss (Aa. pp. 102-103), with prejudice, plaintiffs-appellants' Verified Complaint.  Further, they contend that it was

error for the district court to grant defendant-appellee Eisenberg's motion to dismiss (Aa. pp. 73-74), even though it was without prejudice.

While an Amended Complaint against defendant-appellee Eisenberg has been filed, the district court has not made a determination in respect of plaintiff-appellants' permission to appeal which was filed on September 4, 2024. ECF 94.

Early in the proceedings, defendants-appellees sought stays of discovery, along with adjournment of settlement conference, pending the outcome of their dispositive motions on the pleadings. More specifically, on February 6, 2024, NYC defendants-appellants sought an Order staying discovery pending outcome of their motion to dismiss. ECF 46. The district court granted that motion on February 7, 2024. ECF 47. Similarly, on February 15, 2024, New York City defendant-appellants moved to stay an order for an Initial Pre-Trial Conference. ECF 48. That motion was granted on February 21, 2023 as well. ECF 52. Subsequently, the district court entered an order for a settlement conference scheduled for September 23, 2024. Before that settlement conference was held, the magistrate judge recommended the complaint be dismissed as described above. ECF 72.

On  September 6, 2026, New York City defendants-appellees filed a motion to adjourn the settlement conference scheduled for September 23, 2024. ECF 97. On September 17, 2024, the magistrate judge ordered the settlement conference adjourned.  ECF 98.

Given the fact that no discovery had been exchanged, nor witness statements taken, and with the settlement conferences cancelled, there had been no opportunity to have a word said in plaintiff-appellants' behalf on the merits of their case.

Before the defendants-appellants' disposition motions on the pleadings were filed, the only uncontroverted evidence before the district court was plaintiff-appellants Verified Complaint.  <u>See</u> PA pp. 72; ECF 1.  That complaint contained a Declaration from plaintiff-appellant Akhrar that the "allegations therein are true and correct based upon my direct knowledge,..." PA p. 70 ¶ 3.

It is axiomatic that a grant of dismissal of a complaint pursuant to a defense Rule 12(b)(6) motion, among others, the court examines the evidence most favorable to the party opposing the motion.  *Mirabilio v. Reg'l Sch. Dist. 16*, 761 F.3d 212, 213 (2d Cir. 2014)  As will be discussed further below, there is nothing, arguably, structurally defective about plaintiff-appellants' verified complaint.  PA 1. And it is fact laden.  *Id*.

In opposition to all defendant-appellees dispositive motions to dismiss, plaintiffs-appellants provided statements of fact, either sworn or affirmed to, by the complaining party Mohamed John Akhar, witness Sarah Hayes, and counsel of record Anthony Iannarelli.  PA pp 70-72; pp. 76-104; pp 109-125.

In defendants-appellees motion papers, there was nothing to refute plaintiff-appellants verified complaint and sworn declarations. *Id*. There is a glaring absence of sworn statements by all defendant-appellees that would controvert any of  plaintiffs-appellants allegations. This is an admission, or omission, by all defendant-appellees that everything alleged by plaintiff-appellants in the Verified Complaint was true.

4. Statement of the Case

a. Facts Relevant for Review

i. Declarations of Plaintiff-Appellate Mohamed John Akhtar: December 31, 2023, pp. 77-82; April 16, 2024, pp. 116-123

Plaintiff-Appellants Akhtar and Swing 46 commenced an action  in the United States District Court for the Southern District of New York, against defendants/Appellees defendants Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection

(NYC Defendants/Appellees), along with Eric M. Eisenber a private citizen and Attorney-at-Law of New York. PA. pp. 54-72; ECF 1.

In his sworn Declaration, dated December 11, 2023 filed for consideration by the district court, plaintiff-appellant Akhtar stated he has been a Manhattan restaurant owner and operator for over twenty five years. PA pp. 78-79; ¶ 4 His club, plaintiff-appellant Swing 46, provided music and live entertainment along what is known as Restaurant Row. *Id*. ¶ 5. He described himself as an emigrant from Bangladesh and Muslim, resident of the state of New York, and a United States Citizen. *Id*. ¶ 4. The club also provides work...for musicians, singers, and dancers. *Id*. p. 79, ¶ 5.

The club is facing severe economic consequences because of fines imposed by the defendant-respondent New York City Department of Environmental Protection (hereinafter "NYCDEP") because of noise complaints. *Id*. ¶ 6. The fines are exorbitant: $1,500.00 for the first offense, and over $5,000.00 for the third. Fine money is owed in the amount of over $30,000.00 which the club cannot afford. *Id*.

Citizens can file complaints, sharing the fines imposed with defendant-appellant NYCDEP. Akhtar likened the enforcement mechanism to a "bounty system." *Id*. Akhtar came to learn an individual by the name of Eric M.

Eisenberg (defendant-appellee herein) had been responsible for most, if not all, of the noise complaints. Id. ¶ 7. Plaintiff-appellant Akhtar believes he was being targeted by specifically, describing how defendant-appellee prowled the streets wearing a mask disturbing to plaintiff-appellant and others. Id. pp. 81-82.

Plaintiff/Appellant Akhtar attempted to resolve his outstanding noise complaints with the defendant-appellee NYCDEP, but could not get help from them, nor would supervisory staff return his phone calls. *Id*. p. 80, ¶ 9.  Akhtar learned he should contact a New York City agency known as the Office of Administrative of Trials and Hearings (OATH).  *Id*. ¶ 10. He had difficulty getting "someone on the phone," but when he did he was told he could have an adjournment to find an attorney.  Instead, the OATH office sent plaintiff-appellants a default notice. *Id*.

In a subsequent Declaration provided to the district court, dated April 16, 2024, plaintiff/appellant Akhtar could not get an explanation for the reason for the complaints, and could not fight it, that is, the fraudulent noise complaints. *Id*. p. 121 ¶ 18  He worried about his business  and feared for his "health and wellbeing." *Id*. ¶ 19.

Plaintiff-appellant Akhar was told by a host that defendant-appellee Eisenberg was observed entering the patio and leaned over a table where patrons were dining. He put a cell phone up to an overhead speaker and said for he was collecting evidence. When patrons told him to get away, he screamed something nasty. *Id.* ¶ 9.

Akhtar had at least ten encounters with Eisenberg. *Id.* ¶ 10. When asked to leave, Eisenberg would become nasty to Akhtar. Akhtar came to believe Eisenberg wanted him out of the neighborhood. He came close to being successful in destroying Akhtar's business. *Id.* p. 119, ¶ 12. When Akhtar would encounter Eisenberg on his property he would order him off, but Eisenberg repeatedly returned. *Id.* p. 3 ¶ 17.

II.   <u>Declaration of Witness Sarah Hayes of December 31, 2023 PA pp. 84-87</u>

The allegations made in Plaintiff/Appellants' Complaint were corroborated by one of the entertainers at the club, Sarah Hayes. PA pp. 84-87. Swing 46 had been hit with a blizzard of noise complaints. She characterized the "bounty" for complaints as encouraging the reason to fabricate claims of music defendant-appellat Eisenberg said he could hear outside of the club. *Id.* p.85, ¶ 6. For much of 2023, she observed defendant-appellee Eisenberg

described the challenges the club's owner plaintiff/appellant Akhtar faced because of defendant/respondent Eisenberg's misconduct, which she described as enormous, burdensome, unsettling and that he should be held accountable. *Id*. ¶ 11.

Most significantly, the witness Hayes was of the belief, "because Eisenberg's prowling and hanging around the club" he gave the appearance he was specifically targeting the business owner who she knew to be a "Muslim from the County of Bangladesh." *Id*. ¶ 12. Further addin, "[R]egardless of what some people think of Mr. Akhtar, he is a United States Citizen and productive member of the community." Id. She ended by stating "Eisenberg needs to be held accountable for his actions." Id. ¶ 13.

III.  <u>Declarations of Counsel for Plaintiffs-Appellants Anthony N. Iannarelli Jr., Attorney-at-Law; December 27, 2023 ,PA pp. 90-101; April 16, 2024 PA pp. 107-114</u>

Anthony N. Iannarelli Jr., counsel for plaintiffs-appellants, responded by Declarations dated December 23, 2023 and April 16, 2024, in opposition to both defendant-appellee Eisenberg and defendants-appellees Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection respective motions to dismiss.  PA pp. 90-101 and 107-114.  In partial response, counsel advised the district court that the

case was in the very early stages and other than Plaintiffs/Appellants'

complaint, no substantive pleading had been filed. *Id*. p. 192 ¶ 5.  No

witnesses had been examined, nor documents exchanged. Id.

Counsel's investigation revealed that the bulk of the noise complaints

against plaintiff/appellants were filed by civilian complainants, that is,

individuals that were not New York City employees. Id. pp. 192-193, ¶ 6. Fines

collected for these complaints were, or, expected to be, shared between the

defendant NYCDEP and the civilian complaining witness. Id. p. 93, ¶ 7.

Counsel learned from plaintiff/appellant Akhtar that he, Akhtar,

attempted to resolve the complaints with NYCDEP, but was told "all he could

do was plead guilty and pay the fine." Id. ¶ 8.  Counsel was to personally learn

that no consideration was given for a fair adjudication of the noise complaints.

*Id*. "The system was ripe for corruption, both among civilian complainants and

NYCDEP." Id. p. 94 . ¶ 9

Counsel further advised the district court that he previously served as

an internal affairs investigator for the City of New York, with the primary focus

of investigating corruption within New York City government.  Id. p 94 ¶¶ 9-10.

Based upon counsel's training and experience, along the documented facts

plaintiff/appellants complained of, that "in all probability" fraud was occurring

while falsely accusing merchants of noise violations.  Id. ¶ 11. A concern was raised that fines imposed by a governmental entity would then be shared with the civilian complainant. Id.

Counsel also informed the district court, by sheer coincidence, counsel for plaintiffs/appellants held an advanced degree in environmental science, had been trained in the use of scientific equipment, and had once worked for defendant NYCDEP.  Id. pp. 94-95 ¶ 12.  Counsel further advised that the use of equipment to obtain environmental samples required a trained operator utilizing calibrated instruments. Id. p. 95, ¶ 13. And additionally, counsel had attended continuing education courses sponsored by the United States Environmental Protection Agency. Id. ¶ 12.

Counsel also offered that a properly trained and qualified technician would be expected to keep records of the calibrations for testing equipment. Id. ¶ 13.  Significantly, the district court was informed that "many times" counsel asked the NYC defendant/appellees to turn over records of operator training and equipment calibration to be used in the defense of plaintiffs/appellants, but defendant NYCDEP refused leaving the presumption none existed. *Id*. pp. 95-96, ¶ 16.  The district court was advised by counsel that in his attempts to reach New York City defendants/appellants their

phones went answered, and messages left for supervisors were not returned. *Id*. p. 96, ¶¶ 16-17. When paper notifications were sent by mail to the New York City Office of Administrative Hearing and Trials (hereinafter "OATH" who is not a defendant), with copies to defendant-appellee NYCDEP, requesting discovery, there was never a response and those equests went unanswered. *Id*. pp. 96-97 ¶ 16-18.

Counsel clearly set forth to the district court that neither defendant-appellant NYCDEP, nor OATH, ever responded to counsel's correspondence. *Id*. ¶ 17. At the relevant times OATH's webpage did not list a directory of its employees. Id. By all accounts, OATH did not appear to be a functional governmental entity. *Id*. p. 97 ¶¶ 20-21.

As the district court was informed, prior to initiating the lawsuit herein, and by correspondence dated July 1, 2023, counsel sent a "detailed letter" to the Hon. Sylvia O. Hinds-Radix, who was at the time Corporation Counsel for the New York City Law Department. *Id*. 96-97, ¶ 18. Among the concerns raised were the NYCDEP's refusal to turn over discovery. *Id*.

Copies of that letter were also sent to Eric Adams and Rohit T. Aggarwala, who were not named as defendants at the time, but now defendant/appellees herein, along with Jocelyn Stauber, then the

Commissioner of the Department of Investigation. Not a single one of those individuals, nor their staff, replied to counsel's correspondence. *Id*. ¶ 19. Nor have they to the present.

Plaintiff/appellate Akhtar's belief that he was targeted by defendant/respondents because of his race and religion is supported by not only the acts, but the omissions as well; his verified complaint is well grounded by overwhelming facts as set out in the pleadings. New York City defendants/respondents had been informed how it appeared plaintiff-appellant Akhtar was targeted, yet they failed to take the appropriate action. *Id*. pp. 97-98 ¶¶ 23-24.

Plaintiff/appellate Akhtar described to counsel as feeling dehumanized by the process, that is, the fact that because not a single individual, nor entity, has been willing to give even mere consideration to his prayers for relief. Id. pp. 99-100, ¶¶ 31-34

iv.      Copy of Summons Number 0216 392 386 signed by defendant appellee Eric Eisenberg, with and email address listed as ericnoise@hotmail.com & postal address as PO Box 2452, New York, NY 10108, filed against PA pp. 114plaintiff-appellant La Buca Restaurant, DBA Swing 46 alleging noise violation occurring on October 10, 2022.

b.  Relevant Procedural History

Plaintiff-appellants filed their verified complaint on July 31, 2023, in the United States District Court for the Southern District of New York.  ECF 1. Before any discovery was conducted, on November 27, 2023  defendant-appellee Eric M. Eisenberg filed a dispositive motion to dismiss that complaint. ECF 24. On January 1, 2024, plaintiff-appellants filed a response in opposition to the Eisenberg dismissal motion ECF 34.

Similarly, before conducting discovery, on January 26, 2024, NYC defendants-appellees filed a dispositive motion to dismiss plaintiffs-appellants verified complaint. ECF. 41. On April 18, 2024, 2024, plaintiff-appellants filed a response in opposition to the NYC defendants-appellees dismissal motion. ECF 67.

On February 7, 2024, an Order was entered staying discovery until dispositive motions were decided.  ECF 47.  All defendant-appellees moved, with their respective dispositive motions solely on legal pleadings unsupported by witness's statements.

On June 5, 2024, the magistrate-judge, Figueredo, M.J., filed a Report and Recommendation for dismissal of plaintiffs-appellants' Verified Complaint against Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New

York City Department of Environmental Protection, with prejudice, and dismissal that portion of the complaint against Eric M. Eisenberg without prejudice.  ECF  72; PA pp.  6-34.

On June 21, 2024, plaintiffs-appellants filed an objection to the Report and Recommendation. ECF  76.

On August 19, 2024, the District Court Judge, Clarke, J. adopted the magistrate-judge's Report and Recommendation and dismissed the plaintiffs-appellants' Verified Complaint against Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection, with prejudice, and dismissing the portion of the complaint against Eric M. Eisenberg without prejudice.  ECF 85, PA pp. 3-5

On September 3, 2024, plaintiffs-appellants filed a Notice of Appeal of the lower courts' decision to the United States Court of Appeals for the Second Circuit. ECF 92.

On September 4, 2024, plaintiffs-appellants filed with the district court permission to file an Interlocutory appeal as to the portion of the case ordering dismissed as to defendant-appellant Eric M. Eisenberg.  ECF 94.  No decision on the interlocutory appeal has been entered by the district court.

On October 7, 2024, plaintiffs-appellants filed their amended Complaint against defendant-respondent Eric Eisenberg. ECF 104.

c. <u>The Rulings Presented for Review</u>

By order dated August 19, 2024, the District Court Judge, Clarke, J. adopted the magistrate-judge's Report and Recommendation and dismissed the plaintiffs-appellants' Verified Complaint against Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, New York City Department of Environmental Protection, with prejudice. ECF 85, PA pp. 3-5 . In that same order was a dismissal, without prejudice, of plaintiffs-appellants' verified complaint against defendant-appellant Eric M. Eisenberg. *Id.*

5. <u>Summary of Argument and Standard of Review</u>

Initially, plaintiffs-appellants respectfully request this Court to apply a *de novo* standard of review in considering the arguments herein. Plaintiffs-appellants are of the belief this Court should reverse and remand the district court's order dismissing, with prejudice, plaintiffs' Verified Complaint against defendants-appellees Eric Adams, Mayor of the City of New York, Rohit T. Aggarwala, and the New York City Department of Environmental Protection. Hereinafter, the "NYC defendants-appellees."

20

Further, plaintiffs-appellants also ask this Court to reverse and remand the district court's order dismissing, without prejudice, plaintiffs' Verified Complaint against defendant-appellee Eric M. Eisenberg.

In a grant of dismissal of a complaint pursuant to a dispositive motion on the initial pleadings, the court is constrained to construe a plaintiff's complaint liberally, accepting all factual allegations as true, while drawing all reasonable inferences in the plaintiffs' favor. *Mirabilio v. Reg'l Sch. Dist. 16,* 761 F.3d 212, 213 (2d. Cir. 2014).

Plaintiffs-appellants are not aware of any law that might bar them from seeking redress for the offensive and illegal behaviors that plaintiffs-appellants allege defendants-appellees committed. The United States Constitution and United State Code, 42 U.S.C § 1983, are there to prohibit certain behaviors, particularly when government actors are concerned, such as those plaintiffs-appellants describe in their complaint. See plaintiffs-appellants Verified Complaint at pp 54-72; ECF 1.

### 6. Argument

i.    <u>The district court erred by adopting the Magistrates Report and Recommendation and dismissing  plaintiffs-appellants' Verified Complaint against  the New York City Defendants-Appellees with prejudice and  without prejudice against  defendant-appellee Eric Eisenberg without prejudice.</u>

The plaintiff-appellants made out a *prima facie* case in their verified complaint against all defendant-respondents for money damages by violating, through their acts or omissions, plaintiffs-appellants' U.S. Constitutional Rights, Statutory Rights, among them, Title 48 U.S.C. § 1983, along with the pendent jurisdiction state court claims.

In <u>Vega v. Hempstead Union Free School District,</u> 801 F.3d 72 (2d Cir. 2015) this Court reversed a district court's dismissal of plaintiff's complaint because, among other reasons, the plaintiffs could proceed under a theory of discrimination pursuant to 42 U.S.C. Sec. 1983. Additionally, the plaintiffs had made out a *prima facie* showing of the allegations. *Id.*

Under the facts of this case, plaintiffs-appellants are not aware of any law that might bar them from seeking redress for the offensive and illegal behaviors that plaintiffs-appellants allege defendants-appellees committed. The United States Constitution and United State Code, in this case, 42 U.S.C § 1983, do more than merely sit on a bookshelf for reference. They are there to prohibit certain behaviors, particularly when government actors are involved, and such as those plaintiffs-appellants describe in their complaint. See plaintiffs-appellants Verified Complaint at pp 54-72; ECF 1.

In plaintiffs-appellants' verified complaint, they assert violation of constitutional and statutory claims, along with pedant state court claims. Among them are plaintiffs' first amendment rights to speech, that is, for the government not to inhibit music and dance in private places. The right to due process of law, equal treatment under the law, a right to be free from discrimination based upon, national origin, race, and religious beliefs, and among others. Nor may the government use private citizens as agents to engage in discriminatory activity.

The district court clearly erred by not examining the evidence as most favorable to the party opposing the motion, that is, plaintiffs-appellants. Mirabilio, 761 F.3rd *supra* at 213. It does not appear that the district court weighed any of plaintiffs-appellants' verified evidence at all. Rather, it appears to have taken defendants-appellees at their word that the complaint should be dismissed.

As set out above in *Facts Relevant For Review* above, plaintiffs-appellants went to great length in detailing all of the tortious conduct defendant-appellants engaged in. A considerable investigation went into the case, with witnesses weighing in. Defendants-appellees provided nothing to counter what plaintiffs-appellants asserted under oath and/or affirmation.

ii.    Service Upon Defendant-Appellee Eric Eisenberg was Valid and the Court Should Not Have Dismissed the Plaintiff-Appellants' Complaint

For the purposes of service under federal law pursuant to Rule 4,  an individual can be served within the judicial district of the United States by leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there.  *Fed. R. Civ. P.* (e)(2)(b)

As will be described further below, plaintiffs-appellants were able to locate where defendant appellate Eisenberg resided within a gated compound, but at the time service of summons and complaint he was not at home. ECF 20.

At the location counsel for plaintiffs-appellants, met an individual who identified himself as the superintendent.  The superintend was familiar with defendant-appellant Eisenberg, and accepted the summons and complaint in Eisenberg's behalf.  A question of fact and law not addressed below was whether the superintendent "resided" at the location if he actually lived on the premises. *Id*. But district court dismissed the case before fully examining the issues.

24

Plaintiffs-appellants are confident defendant-appellant Eisenberg was served consistent with New York law.  At all times relevant defendant-appellee Eisenberg was an an attorney-at-law of New York. The law, that is *C.P.L.R. 2103 b.* provides that in a pending action papers to be served upon a party shell be served upon the party's attorney, and such service shall be made:

2. if the attorney's office is open, by leaving the paper with a person in charge, or, if no person is in charge, by leaving it in a conspicuous place;...

On  Wednesday, November 28, 2023, counsel attempted to serve defendant-appellant upon defendant-appellant Eisenberg, at his place of legal business located at 405 Lexington Avenue, New York..."  ECF 23. ¶ 1.

At that location, counsel met a concierge and informed  him that he was there to serve a summons and complaint. *Id*.  ¶ 2.   Counsel displayed the summons and complaint to the  concierge and further explained he was there to serve "upon a lawyer at a law firm on the 48th Floor." Id.  ¶ 3.

The concierge made a call, "...ostensibly to call the firm,..."  but counsel was advised there was no answer. *Id*.  Counsel asked if he could go up to the law firm and "knock on the door" but was denied that request.  ¶ 4.

On November 9, 2023, counsel returned to that location to try (service) again. ¶ 5.  Counsel went to the concierge's desk where a different concierge

from the previous evening was present, and was asked for identification and produced his New York State attorney identification card. *Id*.

The concierge informed counsel that he would not be permitted access because he was not "listed as a 'permitted guest' " in the data base. ¶ 6. Counsel protested, informing the concierge that he was there to serve a summons and complaint but the concierge left the desk and did not return. ¶ 7.

Counsel went to the main floor and found both concierges, that is, the one from the day before, along with the one he met earlier. Counsel protested that denial of access was interfering the service of court papers at a law firm upon an attorney, that is, defendant-appellant Eisenberg. Counsel left the summons and complaint with the concierges with instructions to leave them with defendant-appellant Eisenberg. *Id*. ¶¶ 8-11.

The behavior of the concierges was highly suspicious and it smacked of intentional obstructionism of the legal process. It would be hard to explain that the concierges would act on this matter, as he did, on their own volition.

The statements regarding these events were filed with the district court as declaring them to be true and correct under the penalty of perjury. Significantly, there was no attempt to rebut these facts by defendant

26

Eisenberg by oath or affirmation; therefore, those facts held the presumption

of truth in plaintiffs-appellants behalf. At the least, the district court could

have held hearing on this, or other issues, before dismissing the case.

While plaintiffs-appellants maintain their service of defendant-

appellant Eisenberg at the location was valid. But not wanting to leave

anything to chance, he was also served at his residence.

Service at an attorney's residence is a permitted practice pursuant to

*CPLR* 2103 (b) (4).  The New York law allows for leaving it at the attorney's

residence with a person of suitable age discretion. But this method of service

must be preceded by an attempt of service at the attorney's office. If

unsuccessful,  service may be made at the attorney's residence. id.

On Thursday, November 9, 2023, counsel for plaintiff-appellees went to

a location at 454 West 46 Street, New York, New, where it was believed that

defendant-appellee Eisenberg might reside.  ECF 20. ¶ 5. The location was a

"gated community,"  meaning before granted entrance a visitor would have to

go through a locked gate.  *Id*. ¶ 6.

 Counsel met a man that identified himself as Larry Caputo, a

superintendent of the building. *Id.*  Caputo admitted counsel and directed him

to a dwelling where he indicated defendant-appellant Eisenberg resided. He

27

also verified that the occupant was known to be an attorney. Id. However, no one appeared to be home at that location. Id.

Counsel again spoke to Caputo and explained that he, counsel, was there to serve a summons and complaint upon defendant-appellant Eisenberg. Counsel displayed the documents to the superintendent and told counsel he would accept them in defendant-appellant Eisenberg's behalf. He also advised that he would turn them over when he next saw defendant-appellant Eisenberg. *Id*. 7.

The fact that the superintendent indicated that a person by the name of Eric Eisenberg, who he also knew to be an attorney, confirmed to counsel that he had located defendant-appellant at the correct address. Caputo presented himself as a responsible individual who would turn over the summons and complaint when he next saw defendant-appellant Eisenberg. That is, a person of suitable age discretion. *CPLR* 2103 § (b) 4.

By any account, defendant Eisenberg was properly served if not once, but twice. Definitively, at his legal residence, after two attempts were made at defendant-appellant's place of business, and then, when the papers were left with the superintend. Id.

28

Additionally,   CPLR 2103 § (b)3 provides if the office is open, paper(s) can be lef with the person in change... By any account, that person in charge was the concierge who apparently called to the law office only to determine counsel was not to be admitted, and barred entry. And the rule also permits service

"if no person is in charge, by leaving it in a conspicuous place." *Id*.

Defendant-appellant was served multiple times. And it is noted that he made no attempt at properly controverting, by oath or affirmation, of this fact. But by barring counsel from entering, they asserted they were in charge.

III.   <u>The District Court should have allowed Plaintiff-Appellants to Amend their Pleadings.</u>

The Supreme Court has emphasized that amendments to complaints should normally be permitted, and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules. *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) Besides the exhaustion of state administrative remdeies, the ostensible reason for the district court's dismissal of the complaint, is not a prerequisite to an action under § 1983.   *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 516 (1982)

also verified that the occupant was known to be an attorney. Id. However, no one appeared to be home at that location. Id.

Counsel again spoke to Caputo and explained that he, counsel, was there to serve a summons and complaint upon defendant-appellant Eisenberg. Counsel displayed the documents to the superintendent and told counsel he would accept them in defendant-appellant Eisenberg's behalf. He also advised that he would turn them over when he next saw defendant-appellant Eisenberg. *Id*. 7.

The fact that the superintendent indicated that a person by the name of Eric Eisenberg, who he also knew to be an attorney, confirmed to counsel that he had located defendant-appellant at the correct address. Caputo presented himself as a responsible individual who would turn over the summons and complaint when he next saw defendant-appellant Eisenberg. That is, a person of suitable age discretion. *CPLR* 2103 § (b) 4.

By any account, defendant Eisenberg was properly served if not once, but twice. Definitively, at his legal residence, after two attempts were made at defendant-appellant's place of business, and then, when the papers were left with the superintend. Id.

Additionally,   CPLR 2103 § (b)3 provides if the office is open, paper(s) can be lef with the person in change... By any account, that person in charge was the concierge who apparently called to the law office only to determine counsel was not to be admitted, and barred entry.  And the rule also permits service

"if no person is in charge, by leaving it in a conspicuous place." *Id*.

Defendant-appellant was served multiple times. And it is noted that he made no attempt at properly controverting, by oath or affirmation, of this fact. But by barring counsel from entering, they asserted they were in charge.

iv.     <u>The District Court should have allowed Plaintiff-Appellants</u>
         <u>to Amend their Pleadings.</u>

The Supreme Court has emphasized that amendments to complaints should normally be permitted, and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules. *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) Besides the exhaustion of state administrative remdeies, the ostensible reason for the district court's dismissal of the complaint,  is not a prerequisite to an action under § 1983.     *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 516  (1982)

v.    The District Court erred by accepting at face value Defendant-Appellees contention that an exhaustion of administrative remedies should apply.

In great detail, plaintiff-appellants laid out how the purported administrative remedy was a complete farce. The administrative "remedy" was to go before NYC defendants-appellants Office of Administrative Trials and Hearings.  Plaintiff-Appellant Akhtar tried that but did not receive a scintilla of due process, nor was he afforded any substantive rights. Plaintiff-Appellants Appendix p. 80, ¶¶ 9-11; p. 121-122, ¶¶ 18-20.

Counsel endeavored to attempt to defend by petitioning  to both New York City government officials and OATH.   Plaintiff-Appellants Appendix, pp. 93-97. ¶¶ 8-2, pp. 111-113, ¶¶ 17-22.  The results were no different than what

plaintiff-appellant Akhtar experienced and OATH failed to function as a

legitimate government entity. The U.S. Supreme Court addressed this issue in

*Prez v. Sturgis Public School*, 598 U.S. 142, 143 S. Ct. 859, 215 L. Ed. (2023),

holding that the exhaustion requirement does not preclude a lawsuit where

relief sought was not something an administrative remedy could provide.

Plaintiffs-appellants, as in the Prez case, seek, at a minimum,  compensatory

damages. Nor is it something that OATH could provide.

See also *Patsy v. Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557 (1982)

Exhaustion of administrative remedies  is not a prerequisite to a 28 *U.S. C.* §

1983 action because congress assigned to the courts the role of protecting

constitutional rights and did not intend for civil rights claims to be addressed

through administrative proceedings.

Before this case herein was dismissed, and within the public domain, was

a report of an attempt to extort a bar owner over a noise complaint:

Allie Griffin *et al. NYC bar owner claims outgoing NYPD commish's brother
James Caban tried to 'extort' him over police enforcement: report* New York
Post https://nypost.com/2024/09/12/us-news/nyc-bar-owner-says-james-
caban-tried-to-extort-him-over-nypd-enforcement-report/   New York Post,
Sept. 12, 2024.

Denying citizens access to the courts for federal constitutional  and

statutory claims  only emboldens corrupt government officials.

7. Conclusion

Plaintiffs-appellants' respectfully request this Court to reverse the

decisions of the district court and fully reinstate plaintiffs-appellants' case.

Dated:  January 30, 2025        Respectfully submitted,

                                Anthony N. Iannarelli Jr.
                                Attorney for plaintiffs-appellants

8. Certificate of Compliance

Anthony N. Iannarelli Jr., an attorney at law of New York and of full age

affirms under the penalty of perjury,  to the truth of the following:

1. I am the attorney of record appearing in behalf of plaintiffs-appellants in

   this matter;

2. The brief complies with Fed.R.App.P. 31(g)(1) in that,

3. The brief, excluding the cover and table of contents, is 30 pages,

4. The word count within the brief, excluding cover page, table of contents,

   and certificate of compliance,  is about 5904 words, less than the

   13,000 allowed,

5. The lines are double spaced, with 14 point type lettering.

Dated:  January 30, 2025

                                Anthony N. Iannarelli
                                Attorney for Plaintiffs/Appellants

34